IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WESLEY URCH, JR.,                    )
          Petitioner,       )
                             )
           v.                  )      CIVIL ACTION NO. 13-259
DANIEL P. BURNS,                     )      Judge Arthur J. Schwab
et al.,                              )
          Respondents.      )

# O P I N I O N

Before this Court is a petition for a writ of habeas corpus filed by Petitioner,

Wesley Urch, Jr., pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). On September 30, 2007, he was involved in a hit and

run accident in which one pedestrian was killed and another seriously injured. An Erie County

jury subsequently convicted him of one count of homicide by vehicle, one count of involuntary

manslaughter, and two counts each of recklessly endangering another person, aggravated assault,

and accidents involving death or personal injury. After careful consideration, the Court

concludes that Petitioner is not entitled to habeas relief. Therefore, his petition is denied. A

certificate of appealability also is denied.

I.      **Background**[1]

Petitioner raises 14 claims for habeas relief. He was tried in September 2008 in the Court

of Common Pleas of Erie County. His trial attorney was Timothy Lucas. In its Opinion

addressing Petitioner's post-trial motion, the trial court summarized the case as follows:

---

[1]      Respondents have submitted paper copies of the relevant state court records. They also have filed
electronically the relevant state court records.

On September 30, 2007, at approximately 4:20 p.m., Terri Peoples and Steven Caldwell went to the Knights of St. John Club located at 660 West 26th Street in Erie to watch a Pittsburgh Steelers-Cleveland Browns football game. Terri and Steven, both club members, had been dating for a few months. N.T. Trial, Day 1, 9/17/08, pp. 72-73. They drove to the Club in Terri's small red Mitsubishi Eclipse.

[Earlier that afternoon, at] 12:48 p.m. Appellant [Urch], his girlfriend, Deneen DeVandry …, joined their friends Mark Maraz and Andy Stevens[] at the Knights of St. John Club. Id. at 88. Maraz testified he drank beer while Appellant and Deneen drank an unspecified number of Sea Breezes, a mixed alcoholic drink. Id. at 88-89. The group left the Club at approximately 3:08 p.m. and went to 21 Hampton, a bar located at 2104 Hampton Road, Erie, where they continued to drink beers and Sea Breezes. Id. at 89-90. Maraz testified that Appellant and Deneen got into an argument and were asked by the bar to leave. Id. at 91. Deneen was dropped off at the house she shared with Appellant, located at 1262 East 38th Street, Erie. Id. at 91-92.

Appellant drove himself and Maraz back to the Knights of St. John Club in his Dodge Ram 1500 pickup truck. Id. at 92. Appellant parked the truck near Maraz's business, Maraz's Car Care, located at 642 West 26th Street, Erie. Id. Maraz testified that Appellant parked the truck very closely to a small red car. Id. at 94. Maraz testified that he recognized the small red car as Terri Peoples' Mitsubishi Eclipse or Eagle Talon, and that he knew her and Steven Caldwell as members of the Club. Id. at 93, 97.

Maraz and Appellant entered the Club around 5:30 p.m., ordered drinks, and eventually parted ways. Id. at 95-96. Maraz testified that Appellant drank 8-12 alcoholic drinks during their time together. Id. Appellant later left the Club with a Styrofoam container of chicken wings for Deneen at approximately 9:58 p.m.

Alan Basham …, a friend of Terri Peoples and Steven Caldwell, was with them at the Knights of St. John Club. N.T. Trial, Day 2, 9/18/08, p. 121. Prior to that, the three were a Willows, a nearby bar located at 621 West 26th Street, Erie. Id. Basham testified that his residence was "across the street" from Willows at 614 West 26th Street. Id. at 120. Around 9:30 p.m., Basham left the Club with Terri Peoples and Steven Caldwell. Id. at 123. He left the pair talking near Terri's car and walked home where he sat on his porch. Id. at 123-124. Basham testified that a dark colored Dodge Ram Truck was parked very closely to Terri's car. Id. at 124.

Alija Bajramovic was riding in the front passenger seat of a car driven by his friend Senad Rakovic near the intersection of West 26th Street and Hazel Streets. N.T. Trial, Day 1, 9/17/18, pp. 94-96, 101. Hillary Lepak and an individual only identified as Ramo were in the vehicle's back seat. After dropping off a friend, they were heading east on West 26th Street to McDonald's for food. Id. at 96-97.

Alija testified that ahead on West 26th Street he saw a man and woman standing near a red car with its driver's side door open talking to another person in

a truck. Id. at 98-99. It appeared to Alija that the truck might have hit the red car from behind and that the people were arguing. Id. at 99, 103-104.

Alija then observed the truck suddenly pull out from behind the red car and strike the woman first and then the man. Id. at 104. He testified that he saw the truck's headlights turn on and heard the truck's engine rev and the tires squeal. Id. at 104-105, 125. The woman was briefly dragged by the truck before it ran over her and drove away. Id. at 105-106. Alija called 911 from his cell phone and got out of the car to stop oncoming traffic. Id. at 107-109. Alija described the truck as black or dark blue with tinted windows and an extended cab and was able to get a partial license plate number. Id. at 110-111, 118.

Senad testified that he saw the truck coming at his vehicle and he veered to the right onto the sidewalk to avoid being hit. N.T. Trial, Day 2, 9/18/08, pp. 147-148. He saw the truck, driven by a white male, hit the man, then the woman, dragging her a few feet, before speeding away. Id. at 148-149. He stopped the car to help the victims. Id. at 150.

Hillary, seated behind Senad, testified that she saw a male in a truck arguing with a man and woman who were crossing near West 26th and Hazel Streets. Id. at 75-76. Hillary heard the truck "peel out" with squealing tires from behind a car and watched it strike the man, then the woman and drag her for several feet. Id. at 77-78. Hillary observed the man fall to the ground and then sit up screaming. Id. at 79. She saw the woman lying in the road, not moving. Id. at 80.

Charlotte Hilbert was seated in her car, parked near the Knights of St. John Club, waiting for her daughter's shift at the Club to end at 10 p.m. Id. at 153-154. She testified that she heard a loud bang and assumed there had been an accident on nearby Cherry Street. Id. at 156. Hilbert saw in her mirror a blue truck speeding toward her car. Hilbert thought for a moment that the truck might strike her vehicle. Id. Instead, the truck swerved around her and sped past, turning at the next corner. Id. Hilbert saw two people lying in the street and went into the Club to report an accident. Id. at 156-158.

Mark Maraz was still at the Club when people came into the Club to report an accident. Id. at 96. Maraz went outside and learned that the victims of the accident were Terri Peoples and Steven Caldwell. Id. at 97. He testified that Appellant's truck was gone. Id.

Alan Basham was sitting on his porch when he heard squealing tires and observed traffic backing up on West 26th Street around 10 p.m. Id. at 124-125. He walked down the street and saw Terri Peoples and Steven Caldwell lying in the street. Id. at 125. He also noticed the truck that had been parked behind Terri's car was gone. Id. at 126.

….Both victims were transported to Hamot Medical Center. Id. at 91.

Terri Peoples testified that she does not remember leaving the Knights of St. John Club and being struck. Id. at 75. She woke up in the hospital several days after the accident with numerous injuries including a head injury, a broken jaw, broken ribs and vertebrae, a lacerated liver and a collapsed lung. Id. at 76-81.

Erie Police Department (EPD) Officer Marc Bellotti was dispatched to the scene to take a report on the accident. N.T. Trial, Day 2, pp. 4-5. Officer Bellotti spoke with Alija Bajramovic, Senad Rakovic, Hillary Lepak, and Alan Baham. Id. at 7-9. While at the scene, Office Bellotti learned that Steven Caldwell had been pronounced dead at the hospital. Id. at 7. Based upon that information and the witness' statements, Officer Bellotti contacted the Identification Unit (ID Unit) to investigate. Id. at 8, 11, 23-29. Detective Mark Sennett took photographs. Id. at 12.

Detective Johnathan Peters was called to the scene. N.T. Trial, Day 1, p. 45. He obtained a description of the truck that hit Terri Peoples and Steven Caldwell. Id. at 46. A be-on-the-look-out advisory was put out at 4 a.m. for a dark blue or black pickup truck with tinted windows and a partial plate number of FTJ20. Id. at 54-55.

Mark Maraz walked to the hospital to see how Terri Peoples and Steven Caldwell were. N.T. Trial Day 2, 9/18/08, pp. 97-98. Along the way, he telephoned Deneen DeVandry. Id. at 99. He testified that he suspected that Appellant might have had something to do with the accident. Maraz testified that Deneen was crying when she answered the phone. Id. at 115-116. When he asked to speak with Appellant, Deneen put the phone down, but no one ever spoke to Maraz. Id. He hung up and tried calling her back, but there was no answer. Id.

- - -

The next morning, Mark Polinek contacted EPD stating he believed he sold a truck matching the description given by police to Appellant. N.T. Trial Day 1, 9/17/18, p. 47. Mark Maraz also contacted EPD about his belief that Appellant was the driver of the truck. N.T. Trial Day 2, 9/18/08, p. 48. Based on this information, the police went to Appellant's residence at 1262 West 38th Street.

Commonwealth v. Urch, No. 3333-2007, slip op. at 2-7 (C.P. Erie, Aug.13, 2009) ("Urch 1"),

ECF No. 30-2 at 24-29 (footnotes omitted).

After securing a search warrant for the truck, the police retrieved hairs on the underside

of it, which matched a DNA sample provided by Terri Peoples. The police also discovered that

the front bumper of the truck had been freshly painted, and they found a can of blue spray paint

in the car behind the driver's seat. Id. at 8-9, 11, ECF No. 30-2 at 30-31, 33. Urch was

subsequently arrested and gave a videotaped confession to the police. Id. at 10, ECF No. 30-2 at

32. During his booking, one officer heard Urch say he "just killed someone. Drinking has been

the downfall of my life." Id. Additionally, on a recorded phone call, Urch told his sister that he

was drunk the night of the accident, that he did not mean to hit the victims, and that he drove his car through a car wash because he knew he had hit something. Id. at 10-11, ECF No. 30-2 at 32-33.

Following a three day trial in September 2008, the jury found Urch guilty of all charges. Prior to sentencing, Urch applied for a Public Defender and the trial court appointed Nicole Sloane, Esquire, to represent him. On November 5, 2008, the trial court sentenced him to 22½ to 45 years of incarceration.

Urch subsequently filed a motion for post-sentence relief in which he raised numerous claims, including claims that his trial counsel, Attorney Lucas, provided him with ineffective assistance. Id. at 11-30, ECF No. 30-2 at 33-52. On February 6 and 10, 2009, the trial court presided over an evidentiary hearing at which Urch, Lucas and three other individuals testified.

After the trial court denied his post-trial motion, Urch, through Attorney Sloane, filed an appeal to the Superior Court of Pennsylvania. On August 13, 2009, the trial court issued its Rule 1925(a) Opinion (Urch 1) in which it explained that none of Urch's claims had merit. At the end of that Memorandum, the trial court observed:

> At the [February 2009 evidentiary hearing], the Court permitted Appellant to testify at length and air all of his grievances about the trial, its witnesses, his counsel, etc. N.T. [February 6, 2009 hearing] pp. 53-122. Appellant was fixated on certain details such as the Erie police dispatch records while ignoring others such as his multiple confessions (on video, phone, and to Officer Bailey). None of this persuades this Court to find Attorney Lucas ineffective and/or grant Appellant a new trial. See Commonwealth v. Johnson, 512 A.2d 1242 (1996) where defendant's testimony at ineffective assistance of counsel hearing was self-serving and ultimately rejected as not credible.
>
> Appellant's lack of faith in his own case is readily apparent from the record. Prior to trial, he filed several letters with the Clerk of Courts in anticipation of his appeal. At the colloquy to determine whether he would testify at trial, Appellant again referred to filing a future appeal before the trial had even concluded. N.T. Trial Day 3, 9/19/08, pp. 41-42, 51-52. It appears that Appellant is, was, and perhaps will always be, unsatisfied with the criminal justice system.[17]

> 17. For example, while Appellant accused Attorney Lucas of
> ineffectiveness, he also stated that his appellate counsel, Attorney Sloane,
> did not raise every issue he wanted to present at the [February 2009]
> evidentiary hearing. N.T. [ ] Day 1, 2/6/09, p. 80. The Court recognizes
> that this may put Attorney Sloane in a difficult position, not unlike that of
> Attorney Lucas.

Id. at 30, ECF No. 30-2 at 52.

Next, Sloane filed with the Superior Court a petition to withdraw and a partial Anders

brief.[2] "Since there is no support in the law for a hybrid Anders/advocate's brief," the Superior

Court denied her petition to withdraw "and remanded the appeal so that [Sloane] could file an

advocate's brief on the one issue she found to have arguable merit." Commonwealth v. Urch, No.

892 WDA 2009, slip op. at 6 (Pa. Super. Dec. 3, 2010) ("Urch 2"), at ECF No. 30-6 at 6. Sloane

subsequently filed a direct appeal brief in which she raised one claim: that there was insufficient

evidence to support Urch's convictions of aggravated assault. Brief for Appellant, 892 WDA

2009 (Pa.Super. July 22, 2010), ECF No. 30-5 at 1-27. In that brief, Sloane explained that Urch

wanted her to raise additional claims but she had deemed them to be frivolous and, therefore, she

did not present them. Sloane further explained:

> Unhappy with counsel's finding that all but one issue [on appeal] was
> frivolous, Urch began a letter writing campaign similar in nature to his
> harassment of Tim Lucas, his trial attorney. Urch wrote counsel letters almost
> weekly, sometimes twice a week, making various demands. He complained about
> counsel to her employer and asked the appellate court to remove her from
> representation. Among his complaints he stated that counsel had not spent enough
> time on his case when, in fact, counsel traveled a distance to meet with Urch at
> the state prison and logged more time on Urch's case than any other case she ever
> worked on.
> Recently and while obviously still bitter about what Urch believed was
> insufficient representation by trial counsel, Urch's sister mailed to various

---

[2]    In Pennsylvania, a defendant may not litigate ineffective assistance of trial counsel claims on direct appeal.
Such claims must be raised in a collateral petition for relief pursuant to Pennsylvania's Post Conviction Relief Act
("PCRA"), 42 Pa.Cons.Stat. § 9541 et seq. Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002). Therefore, Urch
would have to wait to litigate his ineffective assistance of counsel claims in a subsequent PCRA proceeding.

attorneys including Erie's District Attorney, myself and Lucas, copies of a 20-year-old Disciplinary Board decision admonishing Lucas when he was a young attorney. Urch's message to appellate counsel was clear; he expects his various demands to be met, including that she raise and argue frivolous issues on appeal.

Id. at 18, ECF No. 30-5 at 23.

On December 10, 2010, the Superior Court issued a Memorandum in which denied Urch's insufficiency of the evidence claim on the merits and affirmed his judgment of sentence. Urch 2, No. 892 WDA 2009, slip op. at 6-13, ECF No. 30-6 at 6-13. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on May 23, 2011.

In the meantime, in June 2011 Urch filed a *pro se* PCRA petition. The trial court appointed William J. Hathaway, Esquire, to represent him. Attorney Hathaway subsequently filed a "no-merit" letter and a motion to withdraw pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988), which establish the procedures for withdrawal of court-appointed counsel in a collateral attack of a judgment of sentence when counsel determines that the petitioner has is raising or wants to raise issues that are without merit. The PCRA court permitted Hathaway to withdraw and denied Urch's PCRA motion.

Urch filed a *pro se* appeal to the Superior Court in which he raised the following 12 issues:

1. Did the trial court err when it failed to allow him to proceed *pro se* and file an amended PCRA petition after PCRA counsel (Hathaway) filed his no-merit letter?

2. Was PCRA counsel ineffective for failing to argue the error of the trial court in denying Urch's motion to suppress physical evidence? Namely, evidence found on Urch's truck while on private property and without a warrant.

3. Was PCRA counsel ineffective for failing to raise and argue direct appeal counsel's ineffectiveness for failing to argue that the trial court erred in denying Urch's motion to

suppress a statement? Namely, the statement given by Urch after he was unlawfully seized/arrested and questioned.

4. Was PCRA counsel ineffective for failing to raise and argue direct appeal counsel's ineffectiveness for failing to argue the trial court erred in denying Urch's motion regarding his unlawful arrest and seizure?

5. Was PCRA counsel ineffective for failing to communicate with Urch, his client, in order to discuss and clarify issues that Urch raised in his initial *pro se* PCRA petition?

6. Did the PCRA court err in denying Urch's motion for discovery, when such records contained exculpatory evidence that was critical for a fair presentation of the PCRA petition, and therefore presented an "exceptional circumstance"?

7. Did the PCRA court err when it abused its discretion by failing to conduct an independent review of Urch's *pro se* PCRA filings, and instead relied solely on PCRA counsel's no-merit letter, when PCRA counsel never communicated with him?

8. Was direct appeal counsel ineffective for failing to argue the error of the trial court in denying Urch's motion to suppress physical evidence? Namely, evidence found on Urch's truck while on private property and without a warrant.

9. Was direct appeal counsel ineffective for failing to argue the error of the trial court in denying Urch's motion to suppress a statement? Namely, the statement given by Urch after he was unlawfully seized/arrested and questioned?

10. Was direct appeal counsel ineffective for failing to argue the error of the trial court in denying Urch's motion regarding his unlawful arrest and seizure?

11. Did the PCRA court err when it granted appointed counsel permission to withdraw when appointed counsel was not effective in representing Urch and the Rules of Criminal Procedure provide for the appointment of "effective" counsel throughout the PCRA proceedings?

12. Did trial counsel (Lucas) fail to adequately investigate and prepare the defense of this case for illegal seizure of the person in a suppression motion?

Brief for Appellant, Commonwealth v. Urch, No. 1647 WDA 2011 at 4-5 (Pa. Super. Mar. 16, 2012), ECF No. 30-9 at 7-8.

On November 14, 2012, the PCRA court issued its Rule 1925(a) Opinion in which it explained that Urch's claims should be denied on the merits. Commonwealth v. Urch, No. 3333-

2007, slip op. 1-15 (C.P. Erie Nov. 14, 2012) ("Urch 3"), ECF No. 30-10 at 99-113. On December 11, 2012, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision to deny relief and adopted the PCRA court's 1925(a) Opinion in full. Commonwealth v. Urch, No. 1647 WDA 2011, slip op. 7-8 (Pa.Super. Dec. 11, 2012) ("Urch 4"), ECF No. 30-11 at 7-8.

In September 2013, Urch filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 4. He raises 14 claims for relief. His first 8 claims are claims that he raised in his PCRA proceeding and which the Superior Court denied on the merits in the case before it at Docket No. 1647 WDA 2011. Specifically, in claims 1 through 8 of the instant petition, Urch raises the claims set forth above at paragraphs 1-3, 5-6, 8-9, and 11. ECF No. 4 at 12-50. In Claim 14 of the instant petition, Urch contends that there was insufficient evidence to support his aggravated assault convictions. ECF No. 4-1 at 32-39. This is the claim that the Superior Court denied on the merits in his direct appeal at Docket No. 892 WDA 2009.[3] Urch also raises the following five claims, which he acknowledges he did not exhaust in his direct appeal or the PCRA appeal at Superior Court Docket No. 1647 WDA 2011. Those claims are:

9. Trial, direct appeal and PCRA counsel were ineffective for failing to challenge the state court's "lack of subject matter jurisdiction." ECF No. 4-1 at 2-11;

10. Trial counsel was ineffective for failing to impeach Detective Peters at the pre-trial and trial proceedings with his prior inconsistent and perjured testimony. ECF No. 4-1 at 12-20;

11. Direct appeal counsel was ineffective for failing to raise the claim that trial counsel was ineffective for failing to impeach Detective Peters. ECF No. 4-1 at 20-23;

---

[3]     Respondents contend that Urch did not exhaust Claim 14. The record shows, however, that he raised the claim that there was insufficient evidence to support his aggravated assault convictions in his direct appeal.

12. Direct appeal counsel was ineffective generally for failing to investigate and raise claims that trial counsel was ineffective and for the manner in which she questioned him at the February 2009 evidentiary hearing. ECF No. 4-1 at 24-31;

13. PCRA counsel was ineffective for failing to raise the claim that trial counsel was ineffective for failing to impeach Detective Peters, and that direct appeal counsel was ineffective for failing to raise that same claim on appeal. ECF No. 4-1 at 31-32.

See also Memorandum of Law In Support of Petition, ECF No. 5. See also ECF Nos. 17, 43 and 52.

Because Urch had filed another proceeding in state court in which he was challenging his judgment of sentence, this Court granted his request to stay this federal habeas case. ECF No. 13. In that state case, which under state law had to be considered to be another PCRA proceeding, Urch raised the same claims he is raising in the instant petition as Claims 9 through 13. Brief for Appellant, Commonwealth v. Urch, No. 1615 WDA 2013 (Pa. Super. Sept. 27, 2013), ECF No. 30-13 at 1-16.

On April 7, 2014, the Superior Court issued a Memorandum in which it affirmed the denial of Claims 9 through 13 because they were filed outside of the PCRA's statute of limitations, which is codified at 42 Pa.Cons.Stat. § 9545(b). Commonwealth v. Urch, No. 1615 WDA 2013, slip op. at 1-8 ("Urch-5"), ECF No. 30-16 at 1-8. This Court subsequently lifted the stay in this case. Respondents filed their answer to Urch's claims, ECF No. 30, and Urch filed a reply, ECF No. 34.

## II.      Discussion

### A.      Standard of Review

Under 28 U.S.C. § 2254, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable in a federal habeas action. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

In describing the role of federal habeas proceedings, the United States Supreme Court noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983). In 1996, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). AEDPA "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); see also Lewis v. Horn, 581 F.3d 92, 109-18 (3d Cir. 2009). AEDPA reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a

substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

AEDPA's standard of review is codified at 28 U.S.C. § 2254(d) and it provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). Thus, AEDPA circumscribes a federal habeas court's review of a state prisoner's constitutional claim when the state court adjudicated that claim on the merits and denied it. For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. See, e.g., Richter, 131 S.Ct. at 784-785; Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014). "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1402 (2011) (citing Richter, 131 S.Ct. at 786).

### B.  Urch's Claims of PCRA Counsel's Ineffectiveness and PCRA Court Error Are Not Cognizable In Federal Habeas

#### (1)  Claims 4 and 5

In Claims 4 and Claims 5, Urch raises stand-alone claims that his PCRA counsel, Attorney Hathaway, provided him with ineffective assistance. Urch did not have a federal

constitutional right to counsel during his PCRA proceeding, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987), and, for that reason, cannot receive habeas relief on a claim that his PCRA counsel was ineffective. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254."). <u>See also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings…. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") Accordingly, Claims 4 and 5 (and all other instances in which Urch raises a claim of ineffective assistance of PCRA counsel) are denied.

### (2)    Claims 1 and 8

In Claims 1 and 8, Urch complains of alleged errors made during the PCRA proceeding. These claims are also not cognizable in a federal habeas case. As the United States Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States.  28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.*

<u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added); <u>see also</u> <u>Lambert</u>, 387 F.3d at 247 ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction."). Accordingly, Claims 1 and 8 (and all other instances in which Urch raises a claim of error in his PCRA proceeding) are denied.

**C. The State Court's Adjudication of Claims 2, 3, 6, 7 and 14 Withstand Review Under AEDPA**

**(1) Claims 2, 3, 6 and 7**

In Claims 2, 3, 6 and 7, Urch raises "layered" claims of ineffective assistance of counsel. Specifically, he contends that his PCRA counsel (Hathaway) was ineffective for contending that his direct appeal counsel (Sloane) was ineffective for failing to argue that his trial counsel (Lucas) was ineffective with respect to matters related to the suppression of evidence. It has already been explained that Urch's claims of PCRA counsel's ineffectiveness are not cognizable. His claims of direct appeal's and trial counsel's ineffectiveness, however, implicate his federal constitutional rights (under the Sixth and Fourteenth Amendments) and can be litigated in a federal habeas proceeding. Because the Superior Court adjudicated them on the merits, see Urch 4, No. 1647 WDA 2011, slip op. at 1-8, ECF No. 30-11 at 4-8, and Urch 3, No. 3333-2007, slip op. at 6-15, ECF No. 30-10 at 104-199, this Court's review of Claims 2, 3, 6 and 7 is through AEDPA's deferential lens.

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Urch's claims of ineffective assistance claims is governed by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Urch must show that his trial counsel's and his direct appeal counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that counsel was effective. Id. at 689. Strickland also requires that Urch demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his direct appeal] proceeding would have been different." Id. at 694.

The Superior Court applied the Strickland standard when it evaluated Urch's claims. Urch 4, No. 1647 WDA 2011, slip op. at 8, ECF No. 30-11 at 8; Urch 3, No. 3333-2007, slip op. at 7-8, ECF No. 30-10 at 105-106.[4] Accordingly, there can be no question that its adjudication of Claims 2, 3, 6 and 7 withstands review under the "contrary to" clause of § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 406 (2000) ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").[5]

The only remaining inquiry for this Court is whether Urch has demonstrated that the Superior Court's adjudication of any of the claims at issue was an "unreasonable application of" Strickland. 28 U.S.C. § 2254(d)(1). The United States Supreme Court has stressed repeatedly the "highly deferential" review that this Court must accord the state court's decision in conducting the "unreasonable application" analysis:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show**

---

[4]     Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

[5]     A state court decision is "contrary to … clearly established Federal law, as determined by the Supreme Court" "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

**that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Richter, 131 S.Ct. at 786-87 (parallel citations omitted) (emphasis added). See also Burt v.

Titlow, __ U.S. __ , 134 S.Ct. 10, 15-16 (2013). This Court also is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. [Id.] Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 788 (parallel citations omitted).

The Superior Court's adjudication of Urch's ineffective assistance of counsel claims was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786-87. Accordingly, its determination that Urch was not entitled to relief on Claims 2, 3, 6 and 7 was not an "unreasonable application of" Strickland and those claims are denied.

### (2)    Claim 14

In Claim 14, Urch contends that there was insufficient evidence to support his aggravated assault convictions. Urch raised this claim in his direct appeal, and the Superior Court denied it on the merits. Urch 2, No. 892 WDA 2009, slip op. at 6-12. Therefore, AEDPA's standard of review at 28 U.S.C. § 2254(d)(1) applies to this Court's review of Claim 14.

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Claim 14 is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. Id. at 309. Under Jackson, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, __ U.S. __ , 132 S.Ct. 2060, 2064 (2012) (*per curiam*) (quoting Jackson, 443 U.S. at 319).

In rejecting Urch's insufficiency of the evidence claim, the Superior Court applied the Pennsylvania equivalent of the Jackson standard. Urch 2, No. 892 WDA 2009, slip op. at 7. See also Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See, e.g., Williams, 529 U.S. at 405-06. Therefore, the only remaining question for this Court to decide is whether the Superior Court's decision was an "unreasonable application of" Jackson. The Supreme Court has made clear that:

> Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury … to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." Cavazos v. Smith, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court

instead may do so only if the state court decision was 'objectively unreasonable.'"
<u>Ibid.</u> (quoting <u>Renico v. Lett</u>, 559 U.S. __, __ (2010) (slip op., at 5)).

- - -

[T]he only question under <u>Jackson</u> is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

<u>Coleman</u>, 132 S.Ct. at 2062, 2065.

There is no basis for this Court to conclude that the Superior Court's decision to deny Urch's claim that there was insufficient evidence to support his aggravated assault convictions was an "unreasonable application of" <u>Jackson</u>. This Court, which must give "considerable deference under AEDPA," to the Superior Court's adjudication of this same claim, <u>id.</u> at 2065, cannot grant Urch relief under the circumstances presented here. Its adjudication of Claim 14 was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 131 S.Ct. at 786-87. Therefore, Claim 14 is denied.

### (3) The Remainder of Urch's Claims Are Procedurally Defaulted

The Superior Court denied Claims 9, 10, 11, 12 and 13 because they were untimely under the PCRA's statute of limitations. <u>Urch 5</u>, No. 1615 WDA 2013, slip op. at 6-8, ECF No. 30-16 at 6-8. As a result, those claims are procedurally defaulted for the purposes of federal habeas review. The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision denying a federal constitutional claim when the state court's decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment. <u>See</u>, <u>e.g.</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996); <u>Coleman</u>, 501 U.S. at 732. A state rule of procedure is "independent" if it does not depend for its resolution on answering any

federal constitutional question. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985). That is the case here, since the Superior Court's decision was based on the application of a state statute of limitations rule. A state rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). See also Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007); Beard v. Kindler, 558 U.S. 53, 60 (2009). The state rule at issue here qualifies as "adequate" because it was firmly established and regularly followed in Pennsylvania at the time Urch's default occurred.

A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). A lack of knowledge or an unawareness of procedural rules is not an "external" factor that excuses a petitioner's failure to raise his claims to the state court in a timely manner. See Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (mere inadvertence does not constitute cause for a procedural default); Coleman, 501 U.S. at 752 (discussing ignorant or inadvertent procedural default).

Urch has not met that burden of establishing "cause" and "prejudice." He blames Attorney Hathaway for failing to raise the claims at issue in his first PCRA proceeding. In Martinez v. Ryan, __ U.S. __, 132 S.Ct. 1309 (2012), the Supreme Court held that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel

or counsel in that proceeding was ineffective [under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)]." 132 S.Ct. at 1320.[6] Urch cites to the holding in <u>Martinez</u>, but it does not provide him with an avenue to establish "cause" for his default. Hathaway was charged with exercising his professional judgment in deciding whether Urch had any colorable claim for PCRA relief. He also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Chmiel</u>, 30 A.3d 1111, 1190-91 (Pa. 2011). But even more importantly, Hathaway was permitted to withdraw as his PCRA attorney. Therefore, any failure to properly raise and brief his defaulted claims to the Superior Court when his case was on appeal at Docket No. 1647 WDA 2011 is attributable solely to Urch since he was proceeding *pro se*.[7]

Based upon all of the forgoing, Claims 9, 10, 11, 12 and 13 are denied because they are procedurally defaulted.

## III.     Certificate Of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial

---

[6]     The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. <u>Martinez</u>, 132 S.Ct. at 1313-21.

[7]     A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Schlup</u>, 513 U.S. at 316. There is no question that this is not the type of extraordinary case in which a petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Urch's claims should be denied. Accordingly, a certificate of appealability is denied with respect to each claim.

An appropriate Order follows.

Date: January 27, 2015

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge